GREGORY A. BROWER
United States Attorney
District of Nevada

ROBERT R. EDELMAN
Assistant United States Attorney
Nevada Bar. No. 8438
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: (702)388-6336
Facsimile: (702)388-6787
Email: robert.edelman@usdoj.gov

RONALD J. TENPAS
Assistant Attorney General
STEVEN O'ROURKE (Appearing under LR IA 10-3)
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 514-2779; Fax: (202) 514-2583
E-Mail: steve.o'rourke@usdoj.gov
Attorneys for the United States of America.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>REPUBLIC DUMPCO, INC.,<br>REPUBLIC SILVER STATE<br>DISPOSAL INC. (d/b/a REPUBLIC<br>SERVICES OF SOUTHERN NEVADA),<br>and CLARK COUNTY,<br><br>        Defendants. | Civ. No: 08:1024 |

**COMPLAINT**

The United States of America, by the authority of the

Attorney General of the United States and through the undersigned

attorneys, acting at the request of the Administrator of the

1  United States Environmental Protection Agency ("EPA") and the
2  Bureau of Land Management ("BLM") of the Department of the
3  Interior, files this complaint and allege as follows:

4  **NATURE OF ACTION**

5      1.    This is a civil action brought against Republic Dumpco,
6  Inc. ("Republic Dumpco") and Republic Silver State Disposal Inc.
7  d/b/a Republic Services of Southern Nevada (hereinafter "RSSN"),
8  and Clark County, Nevada (collectively these three entities are
9  the "Defendants").   Defendants operate and have operated the
10  Sunrise Mountain Landfill in Las Vegas, Nevada ("Landfill").
11  Plaintiff seeks injunctive relief and civil penalties under the
12  Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, and the Resource
13  Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k,
14  and also seeks damages for trespass and breach of contract.

15  **JURISDICTION, VENUE, NOTICE**

16      2.    This Court has jurisdiction over the subject matter of
17  this action under 28 U.S.C. §§ 1331 (Federal question), 1345
18  (United States as plaintiff), and 1355 (Fine, penalty, or
19  forfeiture), Section 309(b) of the CWA, 33 U.S.C. § 1319(b)
20  (Civil actions), and Section 7003(a) of RCRA, 42 U.S.C. § 6973(a)
21  (Imminent hazard).

22      3.    Venue is proper in the District of Nevada pursuant to
23  28 U.S.C. §§ 108 (Nevada), 1391(b) (Venue generally), and 1395(a)
24  (Fine, penalty, or forfeiture), Section 309(b) of the CWA, 42
25  U.S.C. § 1319(b) (Civil actions), and Section 7003(a) of RCRA, 42

26

1  U.S.C. § 6973(a) (Imminent hazard) because it is the judicial

2  district in which Defendants are doing business, in which the

3  land fill is located, and in which the violations occurred.

4     4.   Notice of this action has been provided to the Nevada

5  Division of Environmental Protection.

6                            **DEFENDANTS**

7     5.   Defendant Republic DUMPCO is a corporation organized

8  and existing under the laws of the State of Nevada and doing

9  business in the State of Nevada.  Republic DUMPCO is a "person"

10 within the meaning of Section 502(5) of the CWA, 33 U.S.C.

11 § 1362(5) and Section 1004(15) of RCRA, 42 U.S.C. § 6903(15),

12 because it is a corporation.  Republic DUMPCO has operated and

13 continues to operate the Landfill.

14    6.   Defendant Republic Services of Southern Nevada (RSSN)

15 is a corporation organized and existing under the laws of the

16 State of Nevada and does business in the State of Nevada.  RSSN

17 is a "person" within the meaning of Section 502(5) of the CWA, 33

18 U.S.C. § 1362(5) and Section 1004(15) of RCRA, 42 U.S.C.

19 § 6903(15), because it is a corporation.  RSSN has operated and

20 continues to operate the Landfill.

21    7.   Clark County is a political subdivision of the State of

22 Nevada.  Clark County is a "person" within the meaning of Section

23 502(5) of the CWA, 33 U.S.C. § 1362(5) and Section 1004(15) of

24 RCRA, 42 U.S.C. § 6903(15).  Clark County has operated and

25 continues to operate the Landfill.

26

**GENERAL ALLEGATIONS**

8.   The Sunrise Mountain Landfill ("the Landfill") is located on Vegas Valley Drive, Clark County, Nevada approximately three miles from the city limits of Las Vegas.  The Landfill is located near an unnamed Wash that feeds into the Las Vegas Wash. The Las Vegas Wash feeds into Lake Mead.  The unnamed Wash, the Las Vegas Wash, and Lake Mead are each a "water of the United States" and a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

9.   At all times relevant to this Complaint, Clark County has leased property from BLM for use as the Landfill.  At all times relevant to this Complaint, Clark County has contracted with several corporations to operate the Landfill.  Republic DUMPCO and RSSN are past and present operators of the Landfill, by contract with Clark County.

10.   The Landfill began accepting wastes in approximately 1952.  By approximately April 1995, the Landfill had been closed, and it is no longer accepting waste.

11.   On April 28, 1993, the State of Nevada issued General Permit GNV0022233, a general permit for storm water discharges associated with industrial activity in that State.  The Nevada General Storm Water Permit sets forth several conditions applicable to dischargers of storm water, including requirements to develop and implement a storm water pollution prevention program ("SWPPP"), perform periodic storm water evaluations,

operate and maintain treatment or control facilities to prevent
unauthorized discharges, prevent discharges of substances that
would cause a violation of the water quality standards of the
State of Nevada, and monitor any noncompliance.  A discharger
must submit a complete and timely Notice of Intent to be covered
by the General Permit ("NOI"), submit a new NOI when the original
permit expires, and pay an annual fee.  On July 19, 1993, DUMPCO
submitted the appropriate forms to obtain coverage under the
General Permit for the Landfill.  Beginning in July 19, 1993, the
Landfill was covered by and subject to the Nevada General Storm
Water Permit.

12.   Intermittent storms between 1995 and the present
resulted in the discharge of pollutants from the Landfill.  Since
1995 to the present, a variety of pollutants have been released
from the Landfill, including: medical wastes, asbestos, gravel,
sand, rip-rap, and municipal refuse.

13.   On September 11, 1998, at least two separate heavy
rainstorms struck the area of the Landfill.  During or after the
September 1998 Storms, pollutants were discharge from the
Landfill into the unnamed Wash, into the Las Vegas Wash, and into
Lake Mead.  The pollutants included medical wastes, asbestos,
gravel, sand, rip-rap, and a municipal refuse.

14.   On April 26, 1999, EPA Region IX, to an imminent and
substantial endangerment resulting from the Landfill, issued to
Defendants a CWA compliance order that requires them to take the

necessary actions to come into compliance with the CWA at this site and abate the endangerment.

15.   On April 26, 1999, EPA Region IX issued to the Defendants, among others, an Administrative Order pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a).   EPA issued the RCRA Administrative Order to protect the public health and the environment from an imminent and substantial endangerment resulting from the Landfill.

16.   The RCRA Administrative Order required Defendants to properly close the landfill, which includes assessing the current landfill conditions, designing and implementing corrective measures, and developing and implementing a long-term operation and maintenance plan for the Landfill.

17.   EPA has issued three separate Notices of Violation to Defendants for failure to comply with the RCRA Administrative Order, on February 16, 2000, June 18, 2001, and on January 18, 2002.

**FIRST CLAIM FOR RELIEF**
**(RCRA: Imminent and Substantial Endangerment)**

18.   Paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

19.   Defendants have contributed and/or are contributing to the past or present handling, storage, treatment, transportation, or disposal of solid waste at the Landfill.   The past or present handling, storage, treatment, transportation, or disposal of

solid waste at the Landfill may present an imminent and
substantial endangerment to health or the environment.

20.   Pursuant to Section 7003 of RCRA, 42 U.S.C. § 6973, the
United States is entitled to appropriate injunctive relief,
including an Order requiring Defendants to comply with the RCRA
Administrative Order and otherwise abate the endangerment.

**SECOND CLAIM FOR RELIEF**
**(RCRA: Penalties for Violation of Administrative Order)**

21.   Paragraphs 1 through 17 are re-alleged and incorporated
herein by reference.

22.   Defendants have willfully violated, or failed or
refused to comply with, the RCRA Administrative Order issued by
EPA pursuant to Section 7003(a) of RCRA, 42 U.S.C. § 6973(a),
requiring actions to abate the imminent and substantial
endangerment to health or the environment.

23.   Pursuant to Section 7003(b) of RCRA, Defendants are
each liable for civil penalties not to exceed $6,500 per day for
each violation occurring after March 15, 2004 and $5,500 per day
for each violation occurring between January 31, 1997 and March
15, 2004.

**THIRD CLAIM FOR RELIEF**
**(CWA, Violations of Administrative Order)**

24.   Paragraphs 1 through 17 are realleged and incorporated
herein by reference.

25.   On April 26, 1999, EPA Region IX, responding to an
imminent and substantial endangerment resulting from the

Landfill, issued to Defendants a CWA compliance order that requires them to take the necessary actions to come into compliance with the CWA at this site and abate the endangerment.

26.  RSSN and Republic DUMPCO have violated the administrative order "In the Matter of: Republic Disposal Urban Maintenance Processing Co., Inc., Docket No. CWA-309-99-14."

27.  RSSN and Republic Dumpco's violation of the CWA administrative Order subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.  33 U.S.C. § 1319(b) and (d).

**FOURTH CLAIM FOR RELIEF**
**(CWA: Leachate Discharges Without a Permit)**

28.  Paragraphs 1 through 17 are realleged and incorporated herein by reference.

29.  Leachate was discharged through a discharge channel at the Landfill into the unnamed wash from at least one seep at the Landfill from approximately September 11, 1998 until approximately October 2, 1998.

30.  Leachate was discharged through a discharge channel at the Landfill into the unnamed wash from at least one seep at the Landfill for at least one day, approximately July 8-9, 1999.

31.  The lower channel is a point source within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14). Leachate

8

discharges from landfills are point source discharges within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

32.  The Nevada General Storm Water Permit did not authorize discharges of leachate from the  Landfill, and RSSN and Republic Dumpco were not authorized to discharge pollutants pursuant to any other NPDES permits.

33.  RSSN and Republic Dumpco's unpermitted discharges of leachate from the Landfill violate Section 301 of the CWA, 33 U.S.C. § 1311, subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**FIFTH  CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Develop, Submit, or Implement SWPPP)**

34.  Paragraphs 1 through 17 are realleged and incorporated herein by reference.

35.  The Nevada General Storm Water Permit requires that permittees develop and submit to the Nevada Department of Environmental Protection ("NDEP") a Storm Water Pollution Prevention Plan ("SWPPP").  Preparation of a SWPPP requires specific facility information, development of site-specific Best Management Practices (BMPs) for storm water (which may include construction and maintenance requirements), and periodic

1  evaluations.   Once approved by NDEP, the permitee must implement
2  the SWPPP at the site.

3      36.   Part I, provision C.3 of the Nevada General Storm Water
4  Permit requires that the SWPPP be completed within six months of
5  the authorization date.   Thus, beginning on at least January 19,
6  1994, RSSN and Republic Dumpco were required to complete a SWPPP.
7  Part I, provision C.4 of the Nevada General Storm Water Permit
8  requires that the SWPPP be submitted to NDEP within seven months
9  of the authorization date.   Thus, beginning on at least February
10 19, 1994, RSSN and Republic Dumpco were required to submit a
11 SWPPP to NDEP.

12     37.   Part I, provision C.3 of the Nevada General Storm Water
13 Permit requires that the SWPPP be implemented within one year of
14 the authorization date.   Beginning on at least July 19, 1994,
15 RSSN and Republic Dumpco were required to implement an approved
16 SWPPP.

17     38.   Prior to actions taken in response to EPA's Clean Water
18 Act order, RSSN and Republic Dumpco had not developed or
19 submitted to NDEP any SWPPP.   In response to EPA's Clean Water
20 Act administrative order, RSSN and Republic Dumpco have been
21 working to develop an approvable SWPPP.   On June 24 2000, RSSN
22 and Republic Dumpco submitted a SWPPP, but NDEP found the SWPPP
23 to be inadequate.   As of the date of this Complaint, an
24 approvable SWPPP has not been prepared or submitted to NDEP.

25
26

39.   From at least July 19, 1994 until the present, RSSN and Republic Dumpco failed to implement an adequate SWPPP.

40.   RSSN and Republic Dumpco's failures to prepare, submit, or implement an adequate, approved SWPPP violate the CWA and the Nevada General Storm Water Permit, and subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.   33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

## SIXTH  CLAIM FOR RELIEF
### (CWA, Violations of Nevada General Permit: Pollutant Discharges Causing Violations of Water Quality Standard)

41.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

42.   Part I, provision D.6. of the Nevada General Storm Water Permit mandates that "there shall be no discharge of substances that would cause a violation of the water quality standards of the State of Nevada."

43.   The Nevada Administrative Code requires that all surface waters must be free from floating debris and other floating materials in amounts sufficient to be unsightly or in amounts sufficient to interfere with any beneficial use of the water.  Nevada Administrative Code § 445A.121.2.  The Nevada Administrative Code requires that all surface waters must be free from materials attributable to domestic or industrial waste in

amounts sufficient to create a public nuisance or in amounts
sufficient to interfere with any beneficial use of the water.
Nevada Administrative Code § 445A.121.3.   The Nevada
Administrative Code sets forth certain numeric limits on
pollutants as water quality standards.

44.   The Las Vegas Wash provides several beneficial uses,
including but not limited to irrigation, livestock watering, non-
contact recreation, industrial supply, wildlife propagation, and
aquatic life propagation.   Nevada Administrative Code § 445A.121.

45.   Following the 9/98 Storms, beneficial uses of Las Vegas
Wash were substantially impaired for a significant period of time
due to the presence of floating, suspended, and settled garbage
in wash.   Storm water discharges from the  Landfill have exceeded
Nevada's numeric water quality standards for total suspended
solids.

46.   RSSN and Republic Dumpco's discharges of storm water
from the Landfill that cause a violation of the water quality
standards of the State of Nevada violated the CWA and the Nevada
General Storm Water Permit, and subject RSSN and Republic Dumpco
to injunctive relief and a civil penalty not to exceed $32,500
per day for each violation occurring after March 15, 2004 and
$27,500 per day for each violation occurring between January 31,
1997 and March 15, 2004.   33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**SEVENTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Operate and Maintain Facility Properly)**

47.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

48.   Part II, provision A.2 provides that "[t]he permittee shall at all times maintain in good working order and operate as efficiently as possible all treatment or control facilities, collection systems or pump stations installed or used by the permittee to achieve compliance with the terms and conditions of this permit."

49.   After the 9/98 Storms, the storm water control facilities at the Landfill were compromised and the Landfill was vulnerable to damage in the event of further rain.

50.   Until RSSN and Republic Dumpco began work to comply with EPA's Clean Water Act administrative order, RSSN and Republic Dumpco did not repair or otherwise maintain the storm water control facilities at the Landfill.

51.   As of the date of this Complaint, RSSN and Republic Dumpco have not fully repaired or otherwise maintained the storm water control facilities at the Landfill.

52.   RSSN and Republic Dumpco failed to properly operate and maintain all treatment or control facilities from at least September 11, 1998 to the present.

53.   RSSN and Republic Dumpco's failure to properly operate and maintain all treatment or control violate the CWA and the

13

Nevada General Storm Water Permit, and subject RSSN and Republic

Dumpco to injunctive relief and a civil penalty not to exceed

$32,500 per day for each violation occurring after March 15, 2004

and $27,500 per day for each violation occurring between January

31, 1997 and March 15, 2004.  33 U.S.C. § 1319(d); 40 C.F.R.

§ 19.4.

**EIGHTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Monitor Impacts of Noncompliance)**

54.   Paragraphs 1 through 17 are realleged and incorporated

herein by reference.

55.   Part II, provision A.3 of the Nevada General Storm

Water Permit mandates that "[t]he permittee shall take all

reasonable steps to minimize any adverse impact to receiving

waters resulting from noncompliance with any effluent limitations

specified in this permit, including such accelerated or

additional monitoring as necessary to determine the nature and

impact of the noncomplying discharge."

56.   Following the September 11, 1998 rains, RSSN and

Republic Dumpco performed only a rough field assessment to

monitor the nature and impact of the discharges.  RSSN and

Republic Dumpco did no other monitoring of the nature and impact

of the discharges.

57.   RSSN and Republic Dumpco failed to adequately monitor

in the event of noncompliance from at least September 11, 1998

until April 26, 1999.

58.  RSSN and Republic Dumpco's failure to monitor in the event of noncompliance violated the CWA and the Nevada General Storm Water Permit, and subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**NINTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Report Discharges and Non-Compliance)**

59.  Paragraphs 1 through 17 are realleged and incorporated herein by reference.

60.  Part I, provision D.13 mandates that an oral report of noncompliance or discharge which may seriously endanger health or the environment be provided as soon as possible, but no later than 24 hours from the time the permittee becomes aware of the circumstances, with a written report to follow within 10 days.

61.  On September 11, 1998, construction debris and trash washed off the Landfill into the unnamed Wash.

62.  On information and belief, following September 11, 1998, RSSN and Republic Dumpco never orally reported the noncompliance and discharges.

63.  RSSN and Republic Dumpco did not file any written report that construction debris and trash washed off the Landfill until November 2, 1998, when Environmental Technologies of Nevada

provided a notice of release on behalf of RSSN and Republic Dumpco to the Nevada Office of Emergency Management.

64.  RSSN and Republic Dumpco's failure to orally report, and failure to timely file a written report, of the noncompliance and discharges which may have seriously endangered health or the environment violated the CWA and the Nevada General Storm Water Permit, and subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**TENTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Perform Periodic Evaluations and Submit**
**Reports and Certifications of such Evaluations)**

65.  Paragraphs 1 through 17 are realleged and incorporated herein by reference.

66.  Part I, provision C.3.c. of the Nevada General Storm Water Permit requires that permittees perform periodic evaluations of the Landfill and storm water BMPs as required by Part I.  Part I, provision C.1.b. of the Nevada General Storm Water Permit requires that these periodic evaluations begin one year after the authorization date, and continue annually thereafter.

67.  Part I, provisions C.4.a.2 and C.1.c of the Nevada General Storm Water Permit requires that permittees submit annual reports and compliance certifications to NDEP.  These annual

reports and compliance certifications are to be submitted one month after each evaluation performed pursuant to Part I, provision C.3.c. of the Nevada General Storm Water Permit.

68.   RSSN and Republic Dumpco did not perform periodic evaluations of the Landfill and storm water BMPs from at least July 19, 1994 until November 30, 2000.

69.   RSSN and Republic Dumpco did not submit annual reports and compliance certifications to NDEP as required by Part I, provisions C.4.a.2 and C.1.c of the permit from at least August 19, 1994 until November 30, 2000.

70.   RSSN and Republic Dumpco's failure to perform periodic evaluations of the Landfill and storm water BMPs, and failure to submit annual reports and compliance certifications violate the CWA and the Nevada General Storm Water Permit, and subject RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $32,500 per day for each violation occurring after March 15, 2004 and $27,500 per day for each violation occurring between January 31, 1997 and March 15, 2004.   33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**ELEVENTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Retain Original NOI and Submit a**
**New NOI for Permit Re-issuance)**

71.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

72.   Part I, provision A.2.a of the Nevada General Storm Water Permit requires dischargers to retain a copy of the Notice

17

of Intent to be covered by the General Permit ("NOI") submitted
to obtain coverage under the permit.

73.   Part III, provision A.1. of the Nevada General Storm
Water Permit mandates that "[i]f the permittee desires to
continue to discharge, he shall submit a NOI . . . not later than
180 days before this permit expires.  Dischargers shall retain a
copy of the NOI."

74.   RSSN and Republic Dumpco did not retain a copy of the
NOI submitted on July 19, 1993.  RSSN and Republic Dumpco failed
to retain a copy of the original NOI from approximately July 19,
1993 until the present.

75.   The Nevada General Storm Water Permit expired on May
14, 1998.  The NOI for permit re-issuance was due on November 14,
1998, 180 days prior to May 14, 1998.

76.   RSSN and Republic Dumpco did not submit the required
NOI on November 14, 1998.

77.   RSSN and Republic Dumpco's failure to  retain the
original NOI, and failure to submit a new NOI for permit re-
issuance violates the CWA and the Nevada General Storm Water
Permit, and subjects RSSN and Republic Dumpco to injunctive
relief and a civil penalty not to exceed $32,500 per day for each
violation occurring after March 15, 2004 and $27,500 per day for
each violation occurring between January 31, 1997 and March 15,
2004.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

**TWELFTH CLAIM FOR RELIEF**
**(CWA, Violations of Nevada General Permit:**
**Failure to Pay Annual Fee)**

78.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

79.   Part I, provision A.4 of the Nevada General Storm Water Permit mandates the payment of a $200 annual fee.

80.   RSSN and Republic Dumpco failed to pay the permit fee from at least January 1, 1994 until December 16, 1999.

81.   RSSN and Republic Dumpco's failure to pay the annual fees violated the CWA and the Nevada General Storm Water Permit, and subjects RSSN and Republic Dumpco to injunctive relief and a civil penalty not to exceed $27,500 per day for each violation. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4

**THIRTEENTH CLAIM FOR RELIEF**
**(Trespass on BLM Land)**

82.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

83.   Defendants committed trespass by intentionally entering and placing waste upon BLM land.  Defendants had no legal authority to enter such land.  Defendant are therefore liable to the United States for trespass damages.

**FOURTEENTH CLAIM FOR RELIEF**
**(Violations of Lease and Permits with BLM)**

84.   Paragraphs 1 through 17 are realleged and incorporated herein by reference.

1    85.   Clark County has violated terms and conditions of the

2   lease entered into between BLM and Clark County for leasing the

3   Landfill.

4    86.   Clark County has violated terms and conditions of the

5   Special Use Permit issued by BLM on July 3, 1952 and renewed by

6   BLM on October 17, 1957.

7    87.   Clark County is therefore liable to the United States

8   for breach of the lease and breach of the Special Use Permit.

9                          **PRAYER FOR RELIEF**

10        WHEREFORE, Plaintiff, the United States of America,

11   prays that this Court:

12    1.   Issue an injunction requiring Defendants to comply with

13   the CWA storm water requirements and comply with the State of

14   Nevada's General Permit No. GNV0022233;

15    2.   Assess, pursuant to 33 U.S.C. § 1319(d), civil

16   penalties for violations of the CWA and State of Nevada's General

17   Permit No. GNV0022233;

18    3.   Issue an injunction requiring Defendants to comply with

19   EPA's Administrative Orders, and otherwise take such action as

20   may be necessary to abate the endangerment;

21    4.   Assess, pursuant to 42 U.S.C. § 6973(b), civil

22   penalties for violations of the RCRA Order;

23    4.   Award damages for trespass and violations of the lease;

24    5.   Award Plaintiff its costs and disbursements in this

25   action; and

26

20

6.   Grant such other relief as the Court deems appropriate.

                         Respectfully submitted,

                         GREGORY A. BROWER
                         United States Attorney
                         District of Nevada

                         /s/ Robert R. Edelman
                         ROBERT R. EDELMAN
                         Assistant United States Attorney
                         Nevada State Bar No. 8438
                         333 Las Vegas Boulevard South,
                         Suite 5000
                         Las Vegas, Nevada 89101
                         Telephone: (702) 388-6336
                         Facsimile: (702) 388-6787
                         E-mail: robert.edelman@usdoj.gov

                         RONALD J. TENPAS
                         Assistant Attorney General
                         Environment & Natural Resources
                           Division
                         U.S. Department of Justice

                         /s/ Steven O'Rourke
                         STEVEN O'ROURKE
                         Signing under LR IA 10-3
                         Environmental Enforcement Section
                         Environment & Natural Resources
                           Division
                         United States Department of Justice
                         P.O. Box 7611
                         Washington, D.C. 20044-7611
                         Phone:  (202) 514-2779
                         Fax:    (202) 514-2583